IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| RLI INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| OCEANWIDE, INC. | ) | No. |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff RLI Insurance Company ("RLI") by its attorneys Davis & Campbell L.L.C., states the following for its complaint against Defendant Oceanwide, Inc. ("Oceanwide"):

## NATURE OF THE CASE

1.  This is a breach of contract case prompted by a software company's failure to deliver on its contractual obligations to deliver software services to RLI.

2.  In 2015, RLI selected Oceanwide to supply software and services for the policy management and billings systems of RLI's Transportation group, a component of its insurance business. Oceanwide touts itself as an industry leader in providing highly configurable software for insurance companies of all sizes across the globe. Over a two-year period, RLI paid Oceanwide over $900,000 to develop and configure software for RLI.  Oceanwide breached its obligations under the services agreement by repeatedly failing to provide services in a timely, reputable and competent manner, and by failing to provide software to RLI that operated at all, much less a system that operated in accordance with RLI's specifications and needs.

3.  RLI finds itself back where it started, with nothing to show for its substantial investment and having wasted over two years. RLI seeks here the general damages that it

suffered as a natural consequence of Oceanwide's breaches, both the money paid to Oceanwide and the money spent internally within RLI that was wasted as a result of Oceanwide's breach of its obligations under the parties' June 30, 2015 Services Agreement (the "Services Agreement").

## **PARTIES AND JURISDICTION**

4. RLI is an Illinois corporation with its principal place of business in Peoria, Illinois.

5. On information and belief, Oceanwide is a corporation organized under the laws of Canada, with its principal place of business in Montreal, Quebec.

6. Under 28. U.S.C. § 1332, the parties in this matter are completely diverse, because RLI is a citizen of Illinois and Oceanwide is a citizen of a foreign state.

7. The amount in controversy in this dispute exceeds $75,000, exclusive of interest and costs.

8. Thus, all of the requirements of 28 U.S.C § 1332 are satisfied, and this court has subject matter jurisdiction over this matter.

9. This Court has personal jurisdiction over Oceanwide under 735 ILCS § 5/2-209 and the United States Constitution. Oceanwide has minimum contacts with this State and District, in that it has engaged in specific activities related to this dispute, including, but not limited to: (i) entering into the Services Agreement with Peoria-based RLI; (ii) intending that software services provided under the Services Agreement be used by RLI in this State and District; (iii) sending representatives to RLI's headquarters in Peoria on several occasions; and (iv) accepting payments sent to it by RLI from this State and District. Thus, Oceanwide has sufficient minimum contacts with the District and the State of Illinois such that an exercise of personal jurisdiction comports with principles of due process.

10. Venue lies in this District under 28 U.S.C § 1391 in that a substantial part of the events or omissions giving rise to the claim occurred in this District. Venue also lies in this district under 28 U.S.C. § 1391 in that Oceanwide is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

11. RLI is an insurance company located in Peoria, Illinois that provides insurance policies for a variety of industries nationwide. In 2014, RLI decided to invest in a custom software solution that would automate the policy administration function of its Transportation group. Specifically, RLI wanted a flexible software program that was customized by the software vendor to RLI's specific needs, and that could automate the Transportation group's policy administration function, standardize certain templates, enforce underwriting standards, and adapt to future changes in the dynamic insurance industry. RLI believed that this software solution would allow the Transportation group to reduce costs, improve the quality of its operations, and increase its competitiveness and profitability.

12. Prior to beginning the vendor-selection process, RLI reviewed the operations of its Transportation group and analyzed its software needs.   RLI sought out a company experienced in software development for insurance providers to meet its needs.  In the fall of 2014, RLI issued a request for information from software providers to develop a software solution. RLI received bids from several vendors, including Oceanwide.

13. In its submission Oceanwide touted the capabilities of its Bridge software product (the "Software" or "Bridge Software"), which it claimed satisfied the specifications contained in RLI's request for information. Oceanwide further claimed that Bridge Software "provides unprecedented abilities for configuration of full insurance products without the need for custom

programming or scripting" and "empowers all users to conduct their business with maximum efficiency at a lower cost than most other systems." Oceanwide also stated that "we have never had a failed implementation and we are intensely focused on keeping that record intact."

14. As part of its submission, Oceanwide performed multiple demonstrations of its Bridge software product, and visited RLI's headquarters in Peoria. Oceanwide represented to RLI that Oceanwide could adapt and deliver its Bridge Software solution to meet RLI's specifications in a timely fashion.

15. Ultimately, on the basis of Oceanwide's representations about the Bridge Software Solution and its purported track record of customer satisfaction, RLI selected Oceanwide as its vendor. RLI and Oceanwide executed the Services Agreement on June 30, 2015. A true and correct copy of the Services Agreement is attached hereto as Exhibit A.

16. In the Services Agreement, Oceanwide estimated that developing and implementing the custom Bridge software service tool, with "features including policy administration, rating, document generation, underwriting, billing and Cognos reporting" for RLI's Transportation group, including RLI's commercial specialty auto, public transportation and trucking business lines across all 50 states (the "Project"), would cost $750,000. (Ex. A at App'x D) RLI agreed to pay that amount.

17. In the Services Agreement, Oceanwide made certain representations and warranties to RLI about its performance under the Agreement. For instance, Oceanwide:

> "[R]epresent[ed] and warrant[ed] to [RLI] that it shall, use commercially reasonable efforts to ensure that the Services to be performed. by its personnel shall be performed in a timely, reputable and competent manner in accordance with professional standards." (Ex. A § 5.2)

4

18. Oceanwide also:

> "[R]epresent[ed] and warrant[ed] to [RLI] that the Software will perform substantially in accordance with the specifications described in this Agreement, including its appendices." (Ex. A § 5.3)

19. In the Services Agreement, Oceanwide also agreed to indemnify RLI and hold it harmless from and against all loss or damage of any kind and nature suffered by RLI (including incurring reasonable attorneys fees) as a result of any material breach of Oceanwide's obligations in the Services Agreement, or as a result of a material breach of Oceanwide's representations and warranties contained in the Services Agreement. (Ex. A § 5.9)

20. Under the Agreement, an initial and fundamental step of the Project was the creation of the Solution Design Document (the "SDD"), to be authored by Oceanwide after RLI provided Oceanwide with detailed information about its business and software specifications. (See Ex. A. at App'x B, D) The SDD served as the Project's core planning document and contained an enforceable deadline for the completion of the Project under the Services Agreement. (*Id*.)

21. The Services Agreement allowed Oceanwide to revise the Agreement's $750,000 estimate after Oceanwide reviewed RLI's detailed information and completed the SDD. (Ex. A at App'x. B) Under the Agreement, if Oceanwide revised its estimate by more than 20%, RLI could cancel the Agreement and would be responsible only for fees incurred prior to the date of cancellation. (*Id.*) The Agreement did not authorize Oceanwide to revise the cost estimate under any other circumstances. (See Ex. A at App'x D)

22. Once Oceanwide was selected, RLI assigned a dedicated IT employee within the Transportation group specifically to support the implementation of Software, which included

further examination of its current documentation, business processes and requirements as an input to the rest of the implementation process. The efforts described above led to the development of a detailed requirements document, which was used to set expectations, define the agreed upon project scope, and guide the implementation process throughout the life of the project.

23. RLI provided detailed information about its business and its specifications for the Project in the Fall of 2015, and Oceanwide agreed to complete the SDD by March 23, 2016.

24. Oceanwide did not deliver the SDD until May 12, 2016, fifty days late. After reviewing the detailed business information and software specifications that RLI had provided to it, Oceanwide documented in the SDD that the project would proceed in eight phases, and that the entire Project would "go live", *i.e.* be fully implemented and operational, by November 14, 2016. Oceanwide did not revise its $750,000 cost estimate after reviewing RLI's documents and delivering the SDD. RLI approved the SDD.

25. After approving the SDD, RLI committed substantial internal resources to the Project, and provided Oceanwide on a timely basis with information for Oceanwide to perform its work of configuration, testing, and development of the software services system for RLI. RLI also paid Oceanwide hundreds of thousands of dollars as required by the Services Agreement from July 2015 through December 2016.

26. Oceanwide failed to complete the Project by November 2016. In fact, Oceanwide failed to complete Phase 1 of the Project by November 2016.

27. Oceanwide failed to assign sufficient resources to the Project to perform its contractual obligations under the Services Agreement.

28. After September 2015, Oceanwide continuously failed to meet agreed Project

deadlines. In numerous project meetings, steering committee meetings and discussions, from September 2015 through August 2017, RLI notified Oceanwide that Oceanwide needed to commit to a prompt completion date for the Project as required by the Services Agreement. During this same period of time and in these same meetings and discussions, RLI notified Oceanwide that its software was not performing pursuant to specifications during testing on the development phase of Phase 1 of the Project.

29. By September 2017, a year after it first began to miss contractual deadlines, Oceanwide represented to RLI that the *first phase* of the Project could not be completed until an estimated date of May 2018, approximately one and a half years later than the November 2016 deadline for the completion of the *entire* Project Set forth in the SDD.

30. Oceanwide never provided software services to RLI that performed substantially in accordance with RLI's specifications. From the time that testing began in the middle of 2015, through the middle of 2017, the tests conducted by Oceanwide showed a high number of defects and problems with the software. Oceanwide never provided software services to RLI that were operable and fit for use in RLI's business.

31. Oceanwide's failure to ensure that its services were performed in a timely, reputable and competent manner, and Oceanwide's failure to deliver Software that would perform in accordance with specifications, each constitute material breaches of the Services Agreement.

32. Oceanwide acknowledged to RLI that it failed to commit sufficient resources to the Project, that it failed to meet deadlines, and that its software tests showed high levels of defects and issues during the course of the Project. In October 2017, after Oceanwide indicated that it could not complete the Project until an estimated date of May 2018, after Oceanwide had

repeatedly failed to complete even Phase 1 of the Project, after Oceanwide's tests continued to show high levels of defects and problems over a long period of time, and after Oceanwide indicated the need to develop a new budget for its performance at a substantially higher cost and with more than 2,000 estimated additional hours for completion, RLI notified Oceanwide of RLI's intent to terminate the Services Agreement on the basis of material breaches by Oceanwide. (Ex. A. § 8.3(3))

33. Oceanwide has not cured any of its breaches; in any event, any effort to cure would be futile, given the passage of time and Oceanwide's proven failure to deliver the promised Software on time and in a quality meeting required specifications.

34. RLI had, by the time it terminated the Agreement, paid Oceanwide $901,469.08, which included fees for the development and implementation of Phase 1 of the software system (which was never provided), $50,000 for a rater service (that was never provided and never used) and $150,000 as partial payment for a license for the software system (which was never used as the system was never provided in operable form). RLI had also provided Oceanwide with valuable materials and information about RLI's internal operations and the lines of business in its Transportation division, which Oceanwide may use or attempt to use in connection with other customers and systems going forward.

35. In addition to the monies it paid to Oceanwide, RLI expended substantial monies on internal resources to provide information to Oceanwide and review its attempted performance of the Services Agreement. RLI estimates that it has expended over $800,000 in internal resources for these purposes.

36. RLI came away with nothing to show for its substantial investment in the Bridge Software and the Services Agreement.

## COUNT I
### (Breach of Contract)

37. RLI incorporates its allegations of paragraphs 1 through 36 as if fully stated herein.

38. The Services Agreement is a valid, enforceable contract whose fundamental purpose was to supply RLI with a Software solution that would automate and streamline RLI's Transportation group. As the party supplying the Software, Oceanwide was responsible for the creation of such a Software solution.

39. In the Services Agreement, Oceanwide agreed to "use commercially reasonable efforts to ensure that the Services to be performed by its personnel shall be performed in a timely, reputable and competent manner in accordance with professional standards." (Ex. A § 5.2)

40. Oceanwide failed to use commercially reasonable efforts to ensure that it performed services for RLI in a timely, reputable and competent manner in accordance with professional standards.

41. In the Services Agreement, Oceanwide also agreed "that the Software will perform substantially in accordance with the specifications described in this Agreement, including its appendices." (Ex, A § 5.3)

42. Oceanwide failed to provide Software that performed in accordance with the specifications contained in the Services Agreement.

43. In sum, Oceanwide materially breached the Services Agreement, and thereby deprived RLI of the benefit of its bargain, by:

    A.    Failing to "use commercially reasonable efforts" to perform "in a timely, reputable and competent manner in accordance with professional standards" in violation of § 5.2 of the Services Agreement;

   B.  Failing to deliver Software that "perform[ed] substantially in accordance with the specifications described in th[e] Agreement, including its appendices" in violation of § 5.3 of the Services Agreement;  and,

   C.  Otherwise failing to meet its obligations under the Services Agreement.

  44. RLI has fully performed its obligations under the Services Agreement, including by paying Oceanwide all amounts owed and invoiced under the Agreement and by providing Oceanwide with all information reasonably required for completion of any testing necessary for the correct functioning of the Bridge Software system.

  45. RLI has suffered general damages as the natural and probable consequences of Oceanwide's material breaches of the Service Agreement, including the monies that it paid to Oceanwide, and the monies that it expended for internal resources on the Project.

## **PRAYER FOR RELIEF**

  WHEREFORE, RLI respectfully requests that this Court find Oceanwide liable for breach of contract and award RLI the relief requested herein, including (i) an award of general damages in an amount to be established at trial (presently believed to be approximately $1,700,000); (ii) pre- and post-judgment interest thereon to the extent permitted by law; (iii) RLI's reasonable attorneys fees and litigation expenses, (iv) the return by Oceanwide to RLI of all RLI data and information; and (v) any and all further relief this Court deems just and proper.

Dated this 16th day of February, 2018.

                                          Respectfully Submitted,

                                          s/David G. Lubben

David G. Lubben
Jay H. Scholl
DAVIS & CAMPBELL L.L.C.
401 Main Street, Suite 1600
Peoria, Illinois 61602
Telephone: (309) 673-1681
Facsimile: (309) 673-1690
E-mail: dglubben@dcamplaw.com
         jhscholl@dcamplaw.com

11